UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) JENNIFER WHEELER,            )
                                 )
         Plaintiff,              )
                                 )
vs.                              )   Case No.: CIV-22-697-G
                                 )   *Jury Trial Demanded*
(1) JUPITER ENTERTAINMENT, INC., )
                                 )
         Defendant.              )

## COMPLAINT

COMES NOW, Plaintiff Jennifer Wheeler (Plaintiff) and for her cause of action against Defendant Jupiter Entertainment, Inc. ("Defendant") provides as follows:

### Parties

1. Plaintiff is an individual that resides in the County of Payne, State of Oklahoma.

2. Upon information and belief, Defendant is a Tennessee corporation with its principal offices located in Nashville, TN. Defendant produces a television series under the name Snapped which airs throughout the United States and abroad through the Oxygen Channel.

### Jurisdiction

3. Jurisdiction is appropriate over the parties hereto under the auspice of 28 U.S. §1332 and under Federal Rule of Civil Procedure 4(k)(1)(A).

### Factual Allegations

4. Defendant produces a television series under the name Snapped.

5. Snapped, according to Defendant, "explores the lives and minds of women who have been accused of murder."

6. Snapped is a crime series that airs on the Oxygen channel.

7. Beginning on August 15, 2021, at Season 29, Episode 19 ("Episode"), and thereafter, Snapped aired an episode related to Plaintiff's 2000 charges related to the death of her husband and the trial that ensued thereafter. Ultimately, Plaintiff was convicted by a jury of conspiracy to commit murder, not of murder.

8. On or about February 18, 2021, Defendant sought to copy the exhibits that had been utilized at the aforementioned trial.

9. Upon information and belief, at no time to Defendant seek to obtain the actual trial transcripts of the actual testimony uttered at trial.

10. Defendant thereafter went about gathering information related to the charges against Plaintiff and the trial, presumably, through the trial exhibits and in speaking with various individuals either involved directly in the trial or friends and coworkers of Plaintiff's late husband.

11. During the Episode, Defendant allowed various witnesses carte blanche to disparage Defendant and to distort and mischaracterize the facts and circumstances surrounding the death of Plaintiff's husband and the evidence that was entered at trial without any concern for the truthfulness of the statements.

12. Plaintiff served out her sentence and has been a productive member of society from and after her release from prison.

13. It was clear in watching the Episode, Defendant was not concerned about

getting things right but was more interested in sensationalizing an extremely unfortunate event that occurred over 20 years ago.

14. The false statements definitively provided Plaintiff was involved in an extramarital affair with the individual that killed her husband and that she had participated in previous attempts on her husband's life. Each of these items were mischaracterized and or made up in an attempt to make the Episode more sensational.

15. Plaintiff denies she was involved with the individual that killed her husband during their marriage and testified as such. Plaintiff denies her late husband was hospitalized or had to seek any treatment for alleged poisonings that occurred prior to his death. Witnesses were allowed to state Plaintiff's husband had serious medical conditions in the months prior to his death, despite no evidence ever being offered to support that contention. This did not occur. Defendant did not even try to obtain medical records to corroborate this clearly false statement. The person convicted of the crime was a friend of Plaintiff and her husband's. Defendant allowed a witness to state Plaintiff was caught sitting on the bed of the person who was convicted while he had his shirt off, but that is not what happened and was never proffered as evidence at trial. Of course, Defendant would not know this, because it did not bother to get the trial transcripts. Additionally, Defendant allowed police officer witnesses to state a confession letter, of sorts, had been written. This is not a true statement.

16. The whole narrative of the Episode was that Plaintiff had to get rid of her husband so she could be with the person convicted of the crime, because her parents would not allow her to get divorced. What Defendant failed to discover, because it had no

interest in the truth, is that Plaintiff's own parents are divorced.

17. The Episode was clearly set up to make everyone think what the jury ultimately did not buy, that Plaintiff was guilty of murder. In furtherance of this, Defendant allowed witnesses to make up whatever sort of facts would support that narrative without any regard for the truth.

18. Defendant has continued to air this Episode on multiple occasions since it first aired on August 15, 2022.

19. Defendant has refused to stop airing this Episode of its show Snapped, despite demand for same, much to the detriment of Plaintiff.

## **DEFAMATION**

20. Plaintiff incorporates herein by reference paragraphs 1through19 as though set forth in full herein.

21. The untruthful statements Defendant allowed to be aired on Season 29, Episode 19 on August 15, 2021 and thereafter caused Plaintiff to be subjected to public hatred, contempt, ridicule and disgrace.

22. Defendant communicated these statements through televisions and streaming devices throughout the United States and the world.

23. Defendant knew or should have known false statements were being made

about Defendant and made it clear to their audience who the statements were referencing.

24. Many of the statements made in the Episode were false and would lead the average individual to believe Plaintiff had significantly more culpability than what the jury ultimately found her to have.

25. Clearly, Defendant had no regard for the truthfulness of the statements as they took no measures to make sure of the accuracy of the statements, as evidenced by its failure to even obtain the trial transcripts.

26. Plaintiff has been caused to lose significant business as a result of the Episode and continues to lose business every time the Episode airs.

27. Additionally, Plaintiff gets harassed incessantly every time the Episode airs and it has caused severe anxiety, depression and loss of enjoyment of life.

28. Defendant's actions were intentional and with malice toward Plaintiff and/or were made with reckless disregard for the truth. At best, Defendant's actions were negligent.

29. Defendant should be caused to pull the episode and not air it again. This relief would not have a deleterious affect on any party affected hereby, and it would further the public policy of making certain false statements are not condoned against a private individual.

30. As a direct and proximate result of Defendant's actions as hereinabove detailed, Plaintiff has been damaged in that she has suffered and will continue to suffer economic loss and injury to her reputation all to her damage in a sum in excess of $75,000.00.

WHEREFORE Plaintiff prays for judgment against Defendant as follows:

1. For damages in a sum in excess of $75,000.00 and in accordance with the proof at the time of trial;

2. For punitive and exemplary damages as awarded by the jury at the time of trial;

3. For interest thereon as provided by law;

4. For injunctive relief restraining Defendant from continuing to air the Episode; and

5. For such other and further relief as the Court deems just and proper.

Dated this 15th day of August 2022.

Respectfully submitted,

s/Scott K. Thomas
Scott K. Thomas, OBA #21842
Houston, Osborn, Sexton & Thomas, PLLC
123 W. 7th Ave, Suite 200
P.O. Box 1118
Stillwater, OK 74076
(405) 377-7618 (voice)
(405) 377-8234 (facsimile)
sthomas@houston-osborn.com
Attorney for Plaintiff